# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CASE NO.: 6:24-cr-00004 |
| DAVID CASSADY, | |
| Defendant. | |

## GOVERNMENT'S SENTENCING MEMORANDUM

On January 24, 2020, the Defendant placed two bombs in the mail to be delivered to a federal courthouse in Anchorage, Alaska, and to a federal Department of Justice building in Washington D.C. After three days, no one reported the bombs' existence to authorities so the Defendant decided to bring attention to the matter by attempting to mail two additional bombs. This time, the Defendant told a correctional officer that two parcels would not fit in the mail receptacle and further advised that the packages contained bombs. The correctional officer immediately notified law enforcement who was able to find the parcels and safely remove them.

The Defendant agreed to meet with agents from the Postal Inspector Service and the FBI and told the agents that there were two additional bombs, which he termed "gifts," that had already been sent out in the mail. The Defendant stated he wanted the Department of Corrections to comply with certain demands including being placed in a cell with his partner and a list of commissary items. (Attachment A). The Defendant also drafted letters to the Georgia Bureau of Investigations explaining the reason for constructing and mailing the "gifts." (Attachment B). Cassady stated he mailed one of the bombs to the Department of Justice at 950 Pennsylvania Avenue in Washington D.C. Law enforcement located the 950 Pennsylvania

Avenue package which contained a homemade bomb, as the Defendant accurately stated. However, Cassady refused to disclose the destination location of the other package. The Defendant told the agents "I'm losing any leverage that I may have" if the other address was disclosed. Cassady refused to tell agents the destination address of the other package, and the interview was terminated.

That same day, an employee with the clerk of court at the United States District Court in Anchorage, Alaska received the mail which included a manilla envelope with the Defendant's name in the return address. When she opened it, she noticed wires and immediately triggered the panic alarm. The Marshals evacuated the courthouse and contacted bomb technicians and authorities.

A forensic chemist with the United States Postal Service, examined the bombs and determined they were both "apparently designed to function by a victim-actuated mechanism where opening the cardboard box pulled the insulating strip of heavy stock paper away from the battery terminal, allowing the battery terminal to make contact with the conductive aluminum foil and closing the circuit. Upon closing the circuit, the high resistance steel wire heats up while in contact with / proximity to the ignitable liquid."




## Terrorism Enhancement

The Defendant has objected to the application of the terrorism enhancement. Section 3A1.4 of the U.S. Sentencing Guidelines provides:

> (a) If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32.
>
> (b) In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.

Application Note 1 states that a "federal crime of terrorism" follows the definition set forth in § 18 U.S.C. 2332b(g)(5). That statutory provision defines a "federal crime of terrorism" as an "offense that (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and (B) is a violation of…844(f)(2)."

When agents met with the Defendant, agents wanted the Defendant to disclose the location of the second so that they could intercept the delivery. The Defendant told agents he mailed the bombs in an attempt to force the Georgia Department of Corrections to give him certain food items from the commissary and to allow him to spend six days in a cell with his partner, another inmate. He also complained to agents about his treatment while incarcerated. When agents did not comply with his demands, he refused to tell them the location of the second bomb. In other words, the Defendant constructed and mailed these bombs with the purpose of influencing or affecting the conduct of the Georgia Department of Corrections or to retaliate against his perceived negative treatment while incarcerated. The terrorism enhancement should apply.

## 18 U.S.C. § 3553(a) Factors

Title 18 U.S.C. § 3553(a) provides that the Court shall impose a sentence that is sufficient but not greater than necessary. The statute mandates that the court consider the factors as set forth in subsections 3553(a)(1) through (7) as applicable. Although the applicable guidelines have not

been determined because of outstanding objections, the 3553(a) factors support a sentence of substantial incarceration time.

*Nature and Circumstances of the Offense*

This was an extremely serious offense. The Defendant put the safety of others and lives at risk when he constructed these bombs and decided to place them in the mail. These two packages had to travel a great distance, almost certainly on a plane. Not only did the bomb contain glass fragments, which could cause serious bodily injury to a person upon explosion, the ignitable liquid could have caused a fire creating even more of a substantial risk of harm to a greater number of people. The Defendant intentionally mailed these bombs to federal buildings, which represents a direct attack to governmental institutions. The Defendant's reasoning for taking these actions cannot mitigate or alleviate the seriousness of this case. The Defendant put innocent people in harms way who had no contribution to any alleged mistreatment in prison.

*History and Characteristics of the Defendant*

The history and characteristics of the Defendant support a substantial prison sentence. Cassady's criminal behavior began at age 18 with extremely violent and serious conduct. Cassady was convicted of grand theft auto, buglary, and forgery before his criminal behavior escalated to violence against others. In 1988, the Defendant was convicted of aggrvated sodomy after raping the victim. On October 1, 1991, the defendant was released, but less than one year later, was arrested for kidnapping with bodily injury, false imprisonment, aggravated sodomy, and impersonating an officer. The Defendant was sentenced to life imprisonment based on this violent and invasive conduct, but this did not deter his criminal conduct. In 2022, Cassady was convicted for violation of street gang terrorism and prevention act, conspiracy to commit murder, terroristic threats, and making a false statement. In that case, Cassady and a codefendant conspired to commit

the murder of an incarcerated inmate at the BOP and mailed a letter to the Commissioner of the Georgia Department of Corrections indicating that he and his family would be killed. Additionally, Cassady and a codefendant made threats to United States Attorney for the Northern District of Georgia Byung J. Pak. The Defendant has been incarcerated for the majority of his life and unfortunately he shows no sign of ceasing his criminal behavior.

*Need for the Sentence Imposed*

The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense supports the imposition of a substantial term of imprisonment. Additionally, such a sentence is needed to afford adequate deterrence to criminal conduct. For the reasons stated above, this is an extreme and serious case. The Defendant placed innocent individuals at substantial risk of serious bodily injury and even death. A substantial sentence is warranted to deter anyone else contemplating these actions. Furthermore, a substantial term of imprisonment is needed to protect the public from further crimes of the Defendant. Cassady has shown a complete disrespect for the law since becoming an adult and has continued criminal behavior while in prison. The Defendant's actions have shown he is not capable of law-abiding behavior.

### *Concurrent vs. Consecutive Sentences; Prison Facility Placement*

The Defendant asks this Court to issue a sentence to run concurrent to the Defendant's state sentence[1] and that the Court direct the Defendant to a federal facility. The Government objects to both of these requests. Section 5G1.3(a) of the Sentencing Guidelines provides:

> If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after

---

[1] The Government spoke with the Georgia State Board of Pardons and Paroles who confirmed that the Defendant is serving a life sentence with the possibility of parole. The Defendant has previously been up for parole but was denied.

sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment

Thus, the Guidelines provide that this sentence shall run consecutively to the state sentence. Although a district court has the discretion to run a sentence concurrent to an undischarged term of imprisonment, the Court must consider the § 3553(a) factors in exercising that discretion. *See U.S. v. Fossett*, 881 F.2d 976 (11th Cir. 1989) (holding that 18 U.S.C. § 3584(a) mandates the court consider the § 3553(a) factors in determining whether a sentence should run concurrently or consecutively and § 3353(a) requires the court to consider any pertinent policy statement promulgated by the United States Sentencing Commission); *U.S. v. Schaefer*, 107 F.3d 1280, 1286 (7th Cir. 1997) (holding "when sentencing a defendant to whose sentence § 5G1.3(a) applies, district courts retain the discretion to order a concurrent sentence under § 3584(a); however, to do so, the judge must consider the factors enumerated under § 3553(a) and specifically set forth the reasons for ordering the departure under § 3553(c)(2)."); and *U.S. v. Miller*, 903 F.2d 222, 226 (5th Cir. 1991) (holding that courts retain discretion under § 3584 to impose a concurrent sentence, but that discretion is limited to the district court's power to depart from the Guidelines). This Court should not exercise this discretion in this case. For the reasons outlined above, the § 3553(a) factors strongly weigh against a concurrent sentence.

Regarding the Defendant's request for the Court to direct that he be transferred out of state custody and begin the sentence at a BOP facility, the Government respectfully asserts that the Court does not have jurisdiction to make such an order. "Determination of priority of custody and service of sentence between state and federal sovereigns is a matter of comity to be resolved by the executive branches of the two sovereigns." *U.S. v. Warren*, 610 F.2d 680, 685 (9th Cir. 1980). "The 'power and discretion' to practice comity is vested in the Attorney General. *Ponzi v.*

*Fessenden*, 258 U.S. 254, 262 (1922). "The prisons of the United States and the custody of prisoners under sentence are generally under the supervision and regulation of the Attorney General." *Id.* The State of Georgia has primary jurisdiction over the Defendant. The Georgia Department of Corrections may relinquish custody and allow the Federal Government to be the primary custodian and serve his sentence at a federal BOP facility, but the Court may not order it.

## *Conclusion*

The Defendant committed a serious offense that was an attack on governmental institutitons. The Defednant's purported reason for the actions are not mitigation and should not be used to excuse any behavior. A substantial sentence is needed to reflect the seriousness of this crime, promote respect for the law, and provide just punishment. Finally, the Court should run any sentence imposed consecutively to the state sentence.

BRYAN P. STIRLING
UNITED STATES ATTORNEY

BY: */s/E. Elizabeth Major*
E. Elizabeth Major (ID #13746)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Tel: (803) 929-3000
Email: ellen.major@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| UNITED STATES OF AMERICA | |
|---|---|
| v. | CASE NO.: 6:24-cr-00004 |
| DAVID CASSADY, | |
| Defendant. | |

### CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing GOVERNMENT'S SENTENCING MEMORANDUM on all parties in the case by notice of electronic filing generated as a result of this electronic filing in this Court.

This 15th day of September.

BRYAN P. STIRLING
UNITED STATES ATTORNEY

BY: */s/E. Elizabeth Major*
E. Elizabeth Major (ID #13746)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Tel: (803) 929-3000
Fax: (803) 254-2943
Email: ellen.major@usdoj.gov